Mark RUSSELL, Plaintiff,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.

Civ. A. No. 1734.

United States District Court, E. D. Texas, Tyler Division.

Feb. 9, 1955.

Harry A. Haigler, Tyler, Tex., for plaintiff.

Jack Flock, of Ramey, Calhoun, Brelsford & Hull, Tyler, Tex., George E. Ashley, Dallas, Tex., for defendant.

SHEEHY, District Judge.

The plaintiff Mark Russell is seeking to recover from the defendant, the owner and operator of the telephone exchange and system in Tyler, Texas, damages he claims to have sustained because of the defendant's failure to list his business telephone in its alphabetical telephone directory and his failure to place his advertising in its classified directory published and distributed to its customers in Tyler, Texas on or about March 1, 1954.

The pertinent facts as found are as follows:

For some time prior to February, 1951 Audiphone Hearing Aid Company conducted a hearing aid business in the City of Tyler. In September, 1948 the Audiphone Hearing Aid Company, acting through its district manager, J. P. Morris, entered into a contract with the defendant under the terms of which the defendant was to furnish and did furnish to the Audiphone Hearing Aid Company a business telephone at its place of business. Among the provisions of this contract was a provision to the effect that the Audiphone Hearing Aid Company agreed to the rules and regulations of the defendant as set forth in its tariffs and to any changes in the rules, regulations or tariffs of the defendant. Pursuant to the contract the defendant furnished a business telephone service to the Audiphone Hearing Aid Company and assigned to it as its telephone number No. 2–3521 and continued the furnishing of such service to said Audiphone Hearing Aid Company under said contract up to the time the plaintiff purchased said Audiphone Hearing Aid Company. On or about February 1, 1951 the plaintiff purchased the Audiphone Hearing Aid Company business in Tyler and has continuously from that date to the present operated said business in Tyler. At the time the plaintiff purchased said business he desired to continue the telephone service that had been furnished the Audiphone Hearing Aid Company under the contract aforesaid and desired to retain the telephone number that had been previously assigned to the Audiphone Hearing Aid Company and in keeping with that desire the plaintiff, with the consent of defendant, assumed or took over the contract between the Audiphone Hearing Aid Company and the defendant, above referred to, and the defendant pursuant to said contract furnished plaintiff business telephone service and permitted plaintiff to retain as his business telephone number No. 2–3521. Subsequent to purchasing the Audiphone Hearing Aid Company and prior to 1953 the plaintiff changed the name of the business to Audiphone Hearing Center and operated the business under that name from the time of the change to the present. Prior to the purchase of said business by plaintiff the Audiphone Hearing Aid Company had been listed in de-

fendant's alphabetical directory and had carried advertising in defendant's classified directory. In both the 1952 and 1953 directories plaintiff's business telephone was listed in the alphabetical section of the directories under the listing "Audiphone Hearing Center", which listing plaintiff had a right to as an incident to the contract with defendant which plaintiff assumed and took over and above referred to, under the rules and policies of the defendant. Plaintiff had advertising in the classified sections of defendant's directories for both the years 1952 and 1953.

There was a contract in writing signed by the plaintiff and defendant for plaintiff's advertising that was to be and was incorporated in defendant's 1953 classified directory. This contract was on a printed form prepared and furnished by defendant and was designated as an "Application for Directory Advertising." On the face of the application signed by plaintiff and accepted by defendant for the advertising in the 1953 directory is the following provision: "In attaching our signature, we agree that the terms on the reverse side of this application are made a part hereof and any agreement not incorporated herein in writing is expressly waived." On the reverse side of said application under the heading "Terms" is the following provision: "This agreement is effective with the issue date shown on the face of this application and will continue during the life of this issue as well as all subsequent issues unless this agreement is cancelled by written notice from either party to the other thirty (30) days or more prior to the date on which the next succeeding issue goes to press." Also under the same heading is the following provision: "The applicant agrees that the Telephone Company's maximum liability for damages arising out of errors or omissions in the directory advertising to be provided shall be limited to the amount to be charged for such directory advertising."

On or about December 8, 1953 the plaintiff made an application in writing to the defendant for advertising in the classified section of defendant's directory that was to be issued on or about March 1, 1954. This application was accepted by the defendant on January 13, 1954. Under the terms of that application and contract the defendant was to have certain listings and advertising in defendant's classified directory to be published and issued on or about March 1, 1954 for which plaintiff was to pay defendant a certain sum per month as provided in said application and contract. The application and contract for the 1954 listings and advertising in the classified section of defendant's directory was on the same printed form prepared and furnished by defendant as was the contract for the 1953 advertising, above referred to, and contained the same provisions as the provisions of the 1953 contract, above quoted.

During the year 1953 and up to the time he moved his business to a location on East Ferguson Street in Tyler on or about February 6, 1954 plaintiff conducted his business at a location on West Front Street in Tyler. The location on West Front Street was a residence and plaintiff and his family lived in a part of the house and plaintiff's business was conducted in another part of the house. Defendant furnished plaintiff a business telephone at the West Front Street location which plaintiff used as his business telephone as well as for his residence telephone and for which defendant charged the prescribed business telephone rate.

During January, 1954 plaintiff was in the process of building a new home in Tyler to which he and his family intended to move upon its completion sometime in February, 1954. On or about January 18, 1954 the plaintiff had a telephone conversation with a Mrs. Stansbury, an employee of defendant, in its business office in Tyler. In this conversation the plaintiff advised Mrs. Stansbury of his intention to move into his new home upon its completion in February, 1954 and advised Mrs. Stansbury that he desired telephone service in his new home when

he moved into it. Mrs. Stansbury advised plaintiff, in effect, that she would ascertain whether telephone service for the new home would be available. Subsequent to that conversation Mrs. Stansbury had a further telephone conversation with plaintiff in which she advised plaintiff that telephone service for the new home would be available and would be furnished. Plaintiff then requested Mrs. Stansbury to then assign him a telephone number for his new home. Mrs. Stansbury advised him she would do that and that she would assign to plaintiff as his telephone number in his new home No. 2-3684 in order that plaintiff's number in his new home could appear in defendant's 1954 directory. The number assigned to plaintiff at his new home did appear in defendant's 1954 directory issued on or about March 1, 1954. The plaintiff did not in either of the telephone conversations just mentioned advise Mrs. Stansbury that he desired to give up his business telephone or that he desired to have the advertising in defendant's 1954 classified directory for which he had contracted cancelled and the plaintiff never at any time advised any other employee or representative of defendant that he desired to have the business telephone cancelled or that he desired to have the contract for advertising in the 1954 classified directory cancelled. Immediately after the telephone conversations between plaintiff and Mrs. Stansbury, above referred to, Mrs. Stansbury, through mistake and because of a misunderstanding of plaintiff's desire with reference to having a telephone installed in his new home upon the completion of the new home and a listing thereof in defendant's 1954 alphabetical directory, assumed that plaintiff would have no further desire for a business telephone upon moving to his new home upon its completion in February, 1954 and that plaintiff desired upon such move to change his telephone service from a business telephone to a residential telephone. Laboring under this misunderstanding and erroneous assumption Mrs. Stansbury caused the records of the defendant to reflect that plaintiff desired to change his business telephone from a business telephone to a residential telephone upon his moving to his new home in February, 1954 and desired to have the advertising in defendant's 1954 classified directory theretofore contracted for cancelled. Because of this conduct on the part of Mrs. Stansbury plaintiff's business telephone was not listed in the alphabetical section of defendant's 1954 directory and plaintiff's advertising contracted for in the 1954 classified directory did not appear in the 1954 directory. The conduct on the part of Mrs. Stansbury just mentioned which resulted in plaintiff's business telephone listing and his advertising being omitted from defendant's 1954 alphabetical and classified directories, respectively, was negligence and was a proximate cause of the damages, if any suffered by plaintiff as a result of the omission of his business telephone listing and advertising from the 1954 alphabetical and classified directories.

On or about February 6, 1954 plaintiff moved his place of business from its location on Front Street to a new location on East Ferguson Street in Tyler. A day or so prior to such move the plaintiff in a telephone conversation with Mrs. Stansbury, above mentioned, requested that defendant move his business telephone from the Front Street location to the new location on Ferguson Street with the same telephone number to be assigned at the new location as was assigned to the Front Street location, namely, 2-3521. Mrs. Stansbury advised the plaintiff that this change would be made but that the change was being made too late for the 1954 directory to show the new business address as the time for making of changes in the 1954 directory had expired. Neither Mrs. Stansbury nor any other employee or representative of defendant advised plaintiff that he would not have his business listed in the 1954 alphabetical directory and that he would not have his advertising in the 1954 classified directory. On or about February 6, 1954 the defendant did move

plaintiff's business telephone from the Front Street location to the Ferguson Street location.

The defendant at no time subsequent to January 13, 1954, the date it accepted plaintiff's application for advertising in the 1954 directory, advised plaintiff in writing or otherwise that his advertising would not appear in the 1954 classified directory and that his business telephone would not be listed in the 1954 alphabetical directory.

Defendant in its bill presented plaintiff for the month of March, 1954 and in its bill presented to plaintiff for the month of April, 1954 billed plaintiff for the monthly rate plaintiff, in accordance with his contract for directory advertising, was to pay defendant monthly for said advertising. However, plaintiff has never paid defendant any sum for advertising in the 1954 directory and in its bill presented to plaintiff in May, 1954 defendant credited plaintiff's account with the amount for which it had previously charged and billed plaintiff for March and April directory advertising and thereafter defendant presented plaintiff no further bills for directory advertising in the 1954 directory.

Long prior to any date pertinent hereto the defendant prepared and had printed certain rules and regulations applying to its contracts with its customers, which rules and regulations were at all times pertinent hereto, in printed form and were on file in defendant's business office in Tyler. Among these rules and regulations is the following: "C. Errors—The Telephone Company's liability for damages arising from errors or omissions in the making up or printing of its directories or in accepting listings as presented by customers or prospective customers shall be limited to the amount of actual impairment of the customer's service, and in no event shall it exceed the amount paid for the service during the period covered by the Directory in which the error or omission occurs." The quoted regulation was in full force and effect at all times pertinent hereto.

Although the plaintiff alleged that the omission of his business telephone and the omission of his advertising from the 1954 directory was the result of gross negligence on the part of the defendant and sought to recover exemplary damages, there is no evidence that shows or tends to show that the defendant was guilty of any gross negligence which resulted in the omissions.

There are really two contracts here involved, namely, the contract under which plaintiff was furnished a business telephone and the contract between plaintiff and the defendant under which contract plaintiff's advertising was to be included in defendant's 1954 classified directory. The first mentioned contract will hereinafter be referred to as the business telephone contract and the last mentioned contract will hereinafter be referred to as the advertising contract. The only business telephone contract that plaintiff had with defendant is the contract between Audiphone Hearing Aid Company and the defendant, above referred to, which plaintiff assumed and took over because it was only under that contract that the defendant ever furnished or purported to furnish plaintiff business telephone service. The advertising contract is the application for directory advertising which was signed by plaintiff and accepted by defendant on January 13, 1954 and above referred to.

Whether plaintiff's cause of action, if any he has, against the defendant sounds in tort or in contract the contracts last mentioned must form the basis of any cause of action plaintiff has undertaken to establish. Irrespective of whether the omission of plaintiff's business telephone from the alphabetical section and the omission of plaintiff's advertising from the classified section of the 1954 directory was the proximate result of negligence on the part of the defendant, as above found, the omission of plaintiff's business telephone from the alphabetical listings constituted a breach on the part of defendant of the business telephone contract and the omission of plaintiff's advertising from the

classified directory constituted a breach on the part of defendant of the advertising contract. That being true, the plaintiff would be entitled to recover such damages for the breach of said contracts as he was able to establish by competent evidence unless there is a contractual limitation on the damages, if any, the plaintiff is entitled to recover because of said breaches.

■ As above indicated, the business telephone contract provided that the customer agreed to the rules and regulations of the Telephone Company as set forth in its tariffs. At the time that contract was entered into and at all subsequent times the defendant had promulgated and had, in effect, the rule, above quoted, which limited its liability for errors or omissions in the making up or printing of its directory to the amount of actual impairment of the customer's service and which amount could not, in any event, exceed the amount paid for the service during the period covered by the directory in which the error or omission occurred. That rule of limitation of liability, being a reasonable rule,[1] became a part of the Business Telephone Contract.[2]

■■ The advertising contract signed by both plaintiff and defendant specifically provided that plaintiff agreed that the defendant's maximum liability for damages arising out of errors or omissions in the directory of advertising should be limited to the amount charged for such directory advertising. There can be no question about the validity of this provision and its binding effect on the plaintiff.[3] Since the evidence shows that the plaintiff has paid nothing to the defendant and is not obligated to pay any sum to the defendant for advertising in the 1954 directory, plaintiff can make no recovery herein for any damages sustained by him because of the omission of his advertising from defendant's 1954 classified directory.

■ Because of defendant's limitation of liability rule, which became a part of the business telephone contract, as above pointed out, defendant's liability to plaintiff because of its failure to list plaintiff's business telephone in its 1954 alphabetical directory is limited to the actual impairment of plaintiff's business telephone service, which amount, in any event, shall not exceed the amount paid for the service during the period covered by the directory in which the omission occurred. In order to recover for the breach of the business telephone contract it was incumbent upon plaintiff to establish the amount of actual impairment of his business telephone service because of the omission of his business telephone from the 1954 alphabetical directory and if that amount was in excess of the amount paid by the plaintiff for the telephone service during the period covered by the 1954 directory, it was incumbent upon plaintiff to establish that he paid for business telephone service during the period covered by the 1954 directory and the amount so paid. There is no evidence from which it can be determined the amount of impairment of plaintiff's business telephone service resulting from the omission and there is no evidence as to the amount, if any, paid by plaintiff for business telephone service during the period covered by the 1954 directory.

■ It is evident that plaintiff pitched his case on the theory that he was entitled to recover alleged lost profits in his business because of the omission of his business telephone and the omission of his advertising from defendant's 1954 alphabetical and classified directories irrespective of the limitation of liability rule of the defendant and the limitation of liability provisions of the advertising contract. Because of the limitation of liability provisions of the advertising contract and the limitation of liability

1. Hamilton Employment Service v. New York Telephone Co., 253 N.Y. 468, 171 N.E. 710.

2. Kelly v. Southwestern Bell Telephone Co., Tex.Com.App., 248 S.W. 658.

3. McTighe v. New England Telephone & Telegraph Co., 2d Cir., 216 F.2d 26.

136

rule of defendant, the recovery sought by plaintiff cannot be had.[4]

Upon presentation by defendant's counsel of an appropriate form of judgment, judgment will be entered for the defendant to the effect that plaintiff take nothing of and from the defendant and that all costs of court be adjudged against the plaintiff.

This memorandum opinion will constitute the findings of fact and conclusions of law herein as authorized by Rule 52, F.R.C.P., 28 U.S.C.A.

4. Hamilton Employment Service v. New York Telephone Co., supra; Kelly v. Southwestern Bell Telephone Co., supra; and McTighe v. New England Telephone & Telegraph Co., supra.