554 P.2d 723 (1976)
UNIVERSITY HILLS BEAUTY ACADEMY, INC., a Colorado Corporation, Plaintiff-Appellant and Cross-Appellee,
v.
The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado corporation, Defendant-Appellee and Cross-Appellant.
No. 75-668.
Colorado Court of Appeals, Div. II.
August 19, 1976.
*724 C. Mert Reese, Steven Henry DeVito, Denver, for plaintiff-appellant and cross-appellee.
Stuart S. Gunckel, Denver, for defendant-appellee and cross-appellant.
Selected for Official Publication.
VanCISE, Judge.
Plaintiff, University Hills Beauty Academy, Inc., appeals from a judgment entered upon a jury verdict in favor of defendant, Mountain States Telephone and Telegraph Company (Mountain Bell). Plaintiff sued for loss of business profits and expenses in mitigating its damages allegedly resulting from the negligent omission of its listing under the heading "Beauty Schools" in the classified directory ("yellow pages") of the Denver metropolitan telephone directory published by Mountain Bell in October 1971. Mountain Bell contends that since plaintiff did not pay the contract price for the advertisement, its damages under the terms of the contract were nil and that judgment in favor of Mountain Bell was properly granted. We affirm that judgment.
Mountain Bell admitted that a wrong computer code number had inadvertently been assigned by the account representative to plaintiff's advertising contract so that the bold type listing contracted for erroneously appeared in the yellow pages under the heading "Beauty Salons." However, *725 it claimed that its liability was limited by paragraph 9 of the contract, which provides:
"In case of error in the advertisement as published, or in case of the omission of all or any part of the advertisement from publication, the telephone company's liability, if any, shall be limited to a pro rata abatement of the charge paid to the telephone company for such advertisement in the same proportion that the error or omission reduces, if at all, the value of the entire advertisement, but in no event shall such liability exceed the amount payable to the telephone company for said advertisement during the service life of the directory in which the error or omission occurs." (emphasis supplied)
At the trial, simple negligence was established and the facts as set forth above were proven.
Plaintiff contends on appeal that the court should have determined that the limitation of liability clause in the contract was unconscionable as a matter of law, or, absent such a finding, it should have given plaintiff's tendered instruction directing the jury to determine whether the contract clause was unconscionable. Plaintiff argues that public policy prohibits contractual limitation of liability for negligence when, as here, there is an inequality of bargaining power. It further asserts that the provision itself is substantively unreasonable. We do not agree.
Mountain Bell, a public utility, functions in both a public and a private capacity. Although a limitation of liability clause in a contract with reference to the services to be rendered by it in its public capacity is subject to careful scrutiny by regulatory agencies and, on review, by the courts, that principle has no application to contracts which it enters into in its private capacity. See Barker v. Colorado Region-Sports Car Club of America, Inc., 35 Colo. App. 73, 532 P.2d 372 (1974). The publication of the yellow pages in a telephone directory is wholly a matter of private concern. Gas House, Inc. v. Southern Bell Telephone & Telegraph Co., 289 N.C. 175, 221 S.E.2d 499 (1976); McTighe v. New England Telephone & Telegraph Co., 216 F.2d 26 (2d Cir. 1954).
Where there is no duty to the public, such clauses "are valid when fairly made and may be enforced to preclude recovery for injury caused by simple negligence." Barker v. Colorado Region-Sports Car Club of America, Inc., supra. Although the plaintiff contends otherwise,
"[M]ere disparity of bargaining strength, without more, is not enough to make out a case of unconscionability.... [T]here must be additional factors such as deceptive bargaining conduct .... [T]he doctrine of unconscionability... is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." Wille v. Southwestern Bell Telephone Co., 219 Kan. 755, 549 P.2d 903 (1976).
Whether the contractual limitation for errors or omissions in telephone company yellow pages advertising is unconscionable has not been specifically decided in Colorado. Plaintiff relies on Allen v. Michigan Bell Telephone Co., 18 Mich.App. 632, 171 N.W.2d 689 (1969). There, by a two to one decision, a division of the Michigan Court of Appeals reversed the trial court and declined to give effect to an identical limitation of liability clause because of unequal bargaining power of the parties and the absence of any reasonable alternative for the advertiser.
However, virtually all of the other courts which have considered the matter have held to the contrary and have upheld the contract provision. In both Wille v. Southwestern Bell Telephone Co., supra, and Gas House, Inc. v. Southern Bell Telephone & Telegraph Co., supra, decided in 1976, the contentions in Allen were considered *726 and rejected.[1] As stated in Gas House:
"The inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive."
The appropriate test of unconscionability of a contract provision is set forth in Carlson v. Hamilton, 8 Utah 2d 272, 332 P.2d 989 (1958), quoted with approval in Wille and Gas House:
"People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability."
Here, the enforcement of the limitation of liability clause does not lead to a result so unreasonable as to shock the conscience. There are other directories and publications in which plaintiff could have chosen to and did advertise. The omission of the advertisement from the yellow pages leaves the plaintiff in the same position it would have occupied had it made no contract at all with the telephone company. On the other hand, if we were to void this provision of the contract, it would make the telephone company an insurer against consequential damages by advertisers, contrary to the law which has traditionally been applied to telephone and telegraph companies. See Hamilton Employment Service v. New York Telephone Co., 253 N.Y. 468, 171 N.E. 710 (1930). In fact, to make the telephone company such an insurer would be grossly inequitable. The "premiums," in the form of advertising billings, for such "insurance," in the form of unlimited liability for consequential damages, are disproportionately low (here $5.10 per month) when compared to the magnitude of the potential liability (here $89,500 in claimed damages by this one advertiser), and the rates are obviously based on the limited liability created by the clause in question.
Judgment affirmed.
COYTE and SMITH, JJ., concur.
NOTES
[1] Additional cases upholding the limitation of liability clause in yellow pages advertising contracts include: Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co., 366 F.Supp. 307 (W.D.Ark.1973); Cole v. Pacific Telephone & Telegraph Co., 112 Cal.App.2d 416, 246 P.2d 686 (1952); Advance Service, Inc. v. General Telephone Co., 187 So.2d 660 (Fla.App.1966); Neering v. Southern Bell Telephone & Telegraph Co., 169 F.Supp. 133 (S.D.Fla.1958); Wilson v. Southern Bell Tel. & Tel. Co., 194 So.2d 739 (La.App.1967); Baird v. Chesapeake & Potomac Telephone Co., 208 Md. 245, 117 A.2d 873 (1955); Mitchell v. Southwestern Bell Telephone Co., 298 S.W.2d 520 (Mo.App. 1957); Warner v. Southwestern Bell Telephone Co., 428 S.W.2d 596 (Mo.1968); State ex rel. Mountain States Telephone & Telegraph Co. v. District Court, 160 Mont. 443, 503 P.2d 526 (1972); Federal Building Service v. Mountain States Telephone & Telegraph Co., 76 N.M. 524, 417 P.2d 24 (1966); Correll v. Ohio Bell Telephone Co., 63 Ohio App. 491, 27 N.E.2d 173 (1939); Wheeler Stuckey Inc. v. Southwestern Bell Telephone Co., 279 F.Supp. 712 (W.D.Okl.1967); Georges v. Pacific Telephone & Telegraph Co., 184 F. Supp. 571 (D.Or.1960); Smith v. Southern Bell Telephone & Telegraph Co., 51 Tenn. App. 146, 364 S.W.2d 952 (1962); Wade v. Southwestern Bell Telephone Co., 352 S.W.2d 460 (Tex.Civ.App.1961); Russell v. Southwestern Bell Telephone Co., 130 F.Supp. 130 (E.D.Tex.1955); McTighe v. New England Telephone & Telegraph Co., supra (2d Cir. 1954, interpreting Vermont law). In none of these cases except Cole v. Pacific Telephone & Telegraph Co., supra, was there even a dissent.